No. 23-12568

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

JOSÉ RAMÓN LÓPEZ REGUEIRO,

*Plaintiff-Appellant,*

*v.*

AMERICAN AIRLINES, INC.,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the Southern District of Florida
No. 19-cv-23965

# PETITION FOR PANEL REHEARING
# AND REHEARING *EN BANC*

Ricardo H. Puente
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
(305) 714-9700
rpuente@jonesday.com

Alexa R. Baltes
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 782-3939
abaltes@jonesday.com

Brinton Lucas
Thomas E. Hopson
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
(202) 626-1700
blucas@jonesday.com
thopson@jonesday.com

Christopher R.J. Pace
WINSTON & STRAWN LLP
2121 N. Pearl St., Suite 900
Dallas, TX 75201
(214) 453-6565
crjpace@winston.com

*Counsel for Defendant-Appellee American Airlines, Inc.*

*José Ramón López Regueiro v. American Airlines, Inc.* (23-12568)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel herby certifies that American Airlines, Inc., is the wholly owned subsidiary of American Airlines Group Inc., publicly traded on the Nasdaq Stock Exchange under the ticker AAL, and that no publicly held corporation has a 10% or greater ownership interest in American Airlines Group Inc. The following persons (including their parent corporations, publicly held corporations that own 10% or more of their stock, counsel, and trial judges) have an interest in the outcome of this case:

1.  **American Airlines, Inc.**, Defendant-Appellee, wholly owned subsidiary of American Airlines Group Inc., which is publicly traded on the Nasdaq Stock Exchange under the ticker AAL

2.  **American Airlines Group Inc.**, parent company of Defendant-Appellee American Airlines, Inc. and a publicly held corporation traded on the Nasdaq Stock Exchange under the ticker AAL

3.  **Baltes, Alexa R.**, Jones Day, counsel for Defendant-Appellee American Airlines, Inc.

4.  **Garcia, Mayre**, Rivero Mestre LLP, Counsel for Plaintiff-Appellant

5.  **Hogan, Michelle**, former Jones Day, counsel for Defendant-Appellee American Airlines, Inc.

6.  **Hopson, Thomas E.**, Jones Day, counsel for Defendant-Appellee American Airlines, Inc.

7.  **Jones Day**, counsel for Defendant-Appellee American Airlines, Inc.

8.  **Kuntz, Robert**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

9.  **López Regueiro, José Ramón**, Plaintiff-Appellant

*José Ramón López Regueiro v. American Airlines, Inc.* (23-12568)

10. **Louis, Lauren F.**, U.S. Magistrate Judge for the Southern District of Florida

11. **Lucas, Brinton**, Jones Day, counsel for Defendant-Appellee American Airlines, Inc.

12. **Malave, Ana C., Esq.**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

13. **Martinez, Hon. Jose E.**, U.S. District Judge for the Southern District of Florida

14. **Mecias, Angelica**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

15. **Mestre, Jorge A., Esq.**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

16. **Pace, Christopher R.J.**, Winston & Strawn LLP, counsel for Defendant-Appellant American Airlines, Inc.

17. **Puente, Ricardo H.**, Jones Day, counsel for Defendant-Appellee American Airlines, Inc.

18. **Rolnick, Alan**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

19. **Rivero, Andres, Esq.**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

20. **Rivero Mestre LLP**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

21. **Stander, Robert**, former Jones Day, former counsel for Defendant-Appellant American Airlines, Inc.

22. **Trujillo, Sylmarie**, Rivero Mestre LLP, counsel for Plaintiff-Appellant

23. **Winston & Strawn LLP**, counsel for Defendant-Appellant American Airlines, Inc.

24. **Vazuez, Manuel**, Manual Vazquez, PA, counsel for Plaintiff-Appellant.

Dated: August 20, 2025

*/s/ Brinton Lucas*
_____
Brinton Lucas
*Counsel for American Airlines, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................................................... C-1

TABLE OF CONTENTS ............................................................................. i

TABLE OF AUTHORITIES ....................................................................... ii

STATEMENT OF COUNSEL ..................................................................... iv

STATEMENT OF THE ISSUES .................................................................. v

INTRODUCTION ...................................................................................... 1

RELEVANT FACTS AND COURSE OF PROCEEDINGS ........................... 3

ARGUMENT ............................................................................................. 4

I.    THE PANEL'S DECISION CONTRADICTS TITLE III AND SUPREME COURT PRECEDENT. .................................................................................. 4

    A.  Title III does not provide a cause of action based on Cuba's confiscation of the property taken from Cuban nationals ................................ 4

    B.  Title III does not disregard corporate formalities .............................. 8

II.   THE PANEL'S DECISION CONFLICTS WITH PRIOR CIRCUIT PRECEDENT. ............. 11

III.  THE PANEL'S DECISION RESOLVES EXCEPTIONALLY IMPORTANT QUESTIONS IN A MANNER THAT WILL HAVE HARMFUL CONSEQUENCES ......... 12

CONCLUSION ........................................................................................ 15

CERTIFICATE OF COMPLIANCE .......................................................... 16a

CERTIFICATE OF SERVICE ................................................................... 16b

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) ...................................................................3, 8, 10, 11

*Federal Republic of Germany v. Philipp*,
592 U.S. 169 (2021) ...................................................................... 2, 5, 6

*Fernandez v. Seaboard Marine Ltd.*,
135 F.4th 939 (11th Cir. 2025) ....................................................9, 10, 11, 13

*Garcia-Bengochea v. Carnival Corp.*,
57 F.4th 916 (11th Cir. 2023)...........................................................................3

*Glen v. Club Mediterranée, S.A.*,
450 F.3d 1251 (11th Cir. 2006)...................................................... 3, 5, 9, 11-13

*Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*,
119 F.4th 1276 (11th Cir. 2024) ...................................................3, 10-12

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ..........................................................................................6

*Murray v. Schooner Charming Betsy*,
6 U.S. 64 (1804)................................................................................................6

*RJR Nabisco, Inc. v. European Cmty.*,
579 U.S. 325 (2016) ..........................................................................................6

*United States v. Davila-Mendoza*,
972 F.3d 1264 (11th Cir. 2020).........................................................................6

*United States v. Palmer*,
578 F.2d 144 (5th Cir. 1978) ............................................................................9

**STATUTES**

22 U.S.C. § 1642e ................................................................................10

22 U.S.C. § 1643*l* ................................................................................7, 8

22 U.S.C. § 5100 ................................................................................10

22 U.S.C. § 6022 ................................................................................1, 6

22 U.S.C. § 6023 ................................................................................7, 10, 11

22 U.S.C. § 6081 ................................................................................13

22 U.S.C. § 6082 ................................................................................1, 2, 4, 5, 8, 9, 13

28 U.S.C. § 1603 ................................................................................11

**OTHER AUTHORITIES**

31 C.F.R. § 515.560 ................................................................................1

31 C.F.R. § 515.572 ................................................................................1

Black's Law Dictionary (7th ed. 1999) ................................................................................5

## STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the Panel's decision is contrary to the following decisions of the Supreme Court of the United States and the precedents of this Circuit and that consideration by the full Court is necessary to secure and maintain uniformity of decisions in this Court:

*Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003),

*Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251 (11th Cir. 2006), and

*Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, 119 F.4th 1276 (11th Cir. 2024).

In addition, I express a belief, based on a reasoned and studied professional judgment, that this appeal involves multiple questions of exceptional importance, as set forth on the following page.

Dated: August 20, 2025                 */s/ Brinton Lucas*
_____
Brinton Lucas
*Counsel for American Airlines, Inc.*

## STATEMENT OF THE ISSUES

**1.** Whether the Helms-Burton Act creates a cause of action based on alleged trafficking in property Cuba confiscated from a Cuban national.

**2.** Whether the Helms-Burton Act authorizes a shareholder of a Cuban corporation to sue for alleged trafficking in property Cuba confiscated from the corporation.

## INTRODUCTION

In 1996, Congress created an unusual right of action in Title III of the Helms-Burton Act to address the confiscation of "property from United States nationals by the Castro government." § 6022(3).[1] Specifically, it authorized "any United States national" who "owns the claim to … property" confiscated by Cuba after 1958 to seek damages from whomever "traffics" in that property. § 6082(a)(1). In doing so, however, Congress did not purport to *create* any new claims (or other property rights), or otherwise disturb settled legal principles. Instead, as the United States has explained, Title III just gives a U.S. national who *already owns* the claim to the confiscated property under existing law an action to pursue that right in federal court. That ensures the statute plays the limited, but important, role of vindicating the preexisting property rights of thousands of U.S. nationals who suffered expropriations by the Castro regime.

The Panel here nevertheless adopted a sweeping expansion of Title III, allowing litigants to pursue damages from U.S. businesses in federal court based on Cuba's alleged confiscation of the property of a Cuban corporation. Specifically, it permitted José Ramón López Regueiro to sue American Airlines, Inc. (American) for its operation of flights to Cuba since 2016, all of which were expressly authorized under U.S. law. *See, e.g.*, 31 C.F.R. §§ 515.572(a)(2)(i), 515.560. In Regueiro's telling, American's flights to Havana's airport constitutes "trafficking" in confiscated property.

---

[1] Unless otherwise noted, all section symbols refer to Title 22 of the U.S. Code.

But unlike the property Congress passed Title III to protect, neither this airport nor any claim to it has ever belonged to a "United States national." § 6082(a)(1). Instead, the airport was allegedly owned by a Cuban corporation—CAISA (short for Compañia de Aeropuertos Internacionales, S.A.)—before the Castro regime seized it in 1959. Regueiro's *only* alleged connection to the airport is that his father, also a Cuban national, owned shares in CAISA, which Regueiro supposedly inherited in 1989. From this, the Panel held that Regueiro, who became a U.S. national nearly 60 years after the seizure, could pursue damages from American in federal court for the value of the airport.

That remarkable holding rests on two remarkable errors. *First*, the Panel read an ancillary procedural provision in Title III to create new substantive rights in property Cuba confiscated from Cuban nationals, whether individuals or corporations. The Panel identified no federal, state, or Cuban law that vests Cuban nationals with claims to property appropriated by the Cuban government. And while confiscations from U.S. nationals violate international law, the "domestic takings rule" provides that Cuba's seizure of "property belonging to its own citizens within its own borders is not the subject of international law." *Federal Republic of Germany v. Philipp*, 592 U.S. 169, 176 (2021). CAISA thus has no preexisting "claim" to the confiscated airport, and Title III cannot be read to conjure one into existence. In nevertheless taking that dramatic step, the Panel necessarily held that Congress retroactively created new property rights based on purely foreign conduct, running afoul of a host of clear-statement rules as well as raising significant constitutional concerns.

*Second*, after fashioning new rights for Cuban corporations, the Panel went on to craft a new one for their shareholders, allowing them to sue third parties directly based on property taken from the corporation. But even if *CAISA* owned the claim to the airport, that would not mean *Regueiro*, as a shareholder of that Cuban corporation, had a parallel claim as well. In ruling otherwise, the Panel broke with the bedrock corporate-law rule that "[a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

Each error merits further review. Congress did not take the unprecedented (and constitutionally dubious) step of creating rights based on takings by a *foreign government* from *foreign corporations*, so long as those corporations have a single U.S. shareholder. In holding otherwise, the Panel contravened Title III and Supreme Court precedent. *Id.* It also created a conflict with Circuit precedent by reading Title III to create new property interests, *Glen v. Club Méditerranée, S.A.*, 450 F.3d 1251, 1254-55 (11th Cir. 2006), and to give litigants more rights to seized property than they would otherwise possess, *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, 119 F.4th 1276, 1287-88 (11th Cir. 2024). And it resolved an exceptionally important question in a way that will swamp this Circuit with Title III claims freighted with foreign-policy concerns.

## RELEVANT FACTS AND COURSE OF PROCEEDINGS

Although Congress passed the Helms-Burton Act in 1996, it "remained dormant for 23 years … because the right to bring an action under Title III was suspended by Presidential decree." *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 919 (11th Cir. 2023).

In 2019, President Trump lifted the suspension for the first time. Op. 5. Soon thereafter, Regueiro sued American under Title III for allegedly "trafficking" in confiscated property. Op. 5-6. According to the complaint, the Castro regime had seized Havana's airport in 1959, which was then owned by CAISA. *Id.* At the time, Regueiro's father was a CAISA shareholder. *Id.* Regueiro inherited his father's shares after he died in 1989 and later became a U.S. national in 2015. *Id.* The district court dismissed the complaint because, among other things, Regueiro's suit rested on Cuba's seizure of the property of a Cuban national. Op. 8. The Panel vacated and remanded. Op. 19.

## ARGUMENT

### I.   THE PANEL'S DECISION CONTRADICTS TITLE III AND SUPREME COURT PRECEDENT.

By holding that a U.S. shareholder of a Cuban corporation can pursue a damages action in federal court on the basis of the Cuban government's expropriation of that corporation's property, the Panel improperly expanded Title III in multiple respects.

#### A.   Title III does not provide a cause of action based on Cuba's confiscation of the property taken from Cuban nationals.

**1.** To start, the Panel critically erred in holding that Title III provides an action based on Cuba's confiscation of property from Cuban nationals. Op. 12-13. Before a Title III suit can get off the ground, the plaintiff must identify a "claim" to the confiscated property. § 6082. But Cuba's seizure of the property of its *own* nationals— as opposed to the property of *U.S.* nationals—creates no such "claim."

4

That is because while Title III provides an "action" to a "United States national who owns the claim" to trafficked "property which was confiscated" by the Castro regime, it does not purport to create the underlying "claim" itself. *Id.* After all, a "claim" is just an "interest or remedy recognized at law," Black's Law Dictionary 240 (7th ed. 1999), which is why a plaintiff must "own[]" the claim before he can sue under Title III, § 6082(a)(1). Title III, however, "does not address how one comes to acquire an interest in such property, nor is there any generally applicable federal law governing such matters." U.S. Br. 27, *Del Valle v. Trivago GMBH*, 56 F.4th 1265 (11th Cir. 2022) (No. 20-12407), 2022 WL 1135129. Courts therefore must "look to state law (or foreign law, when applicable) to determine" whether there exists "a claim to property at issue in an action under Title III." *Id.*

Regueiro has not identified any state or foreign law, however, that provides a claim to the airport. For example, he has not asserted that the law of Florida (or any other state) gave CAISA, his father, or him any right to the airport. Nor has Regueiro identified any claim under foreign law. Given that the Castro regime was built on the confiscation of property of Cuban nationals, Cuban law currently does not provide them with a takings claim against their own government. *See Glen*, 450 F.3d at 1255. Neither does international law. Under the "domestic takings rule"—which "has deep roots not only in international law but also in United States foreign policy"—the international law of expropriation does not reach a country's seizure of "property belonging to its own citizens within its own borders." *Philipp*, 592 U.S. at 176-77.

5

Title III reflects this limit by stressing that its cause of action targets the "theft of property from United States nationals," § 6022(3), who, unlike Cuban nationals, *do* have claims against Cuba. *See Philipp*, 592 U.S. at 176 ("a sovereign's taking of a foreigner's property, like any injury of a foreign national, implicate[s] the international legal system"). Here, since the Cuban government seized the airport from a Cuban corporation (CAISA), which was owned by a Cuban national (Regueiro's father), no private party ever acquired a "claim" to that property. Regueiro thus lacks one today.

**2.** The Panel grappled with none of this. Instead, it just held that Title III "does not require the property in question to have been owned by a United States national when the Cuban government confiscated it." Op. 12. But that conclusion requires a clear statement that Congress meant to take such a startling step. For one, the idea that Congress chose to regulate a *foreign* government's appropriation of its *own nationals'* property on *foreign* soil clashes with the presumptions against both extraterritoriality, *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 339 (2016), and violating international law, *Murray v. Schooner Charming Betsy*, 6 U.S. 64, 118 (1804). For another, the idea that Congress in 1996 imposed massive liability on American businesses by creating a property right that did not exist in 1959 contravenes the presumption against retroactivity. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994). And for yet another, the conclusion that Title III purports to regulate "wholly foreign" conduct triggers the avoidance canon by raising serious questions under the Foreign Commerce Clause. *United States v. Davila-Mendoza*, 972 F.3d 1264, 1276 (11th Cir. 2020).

The Panel did not mention these canons, let alone identify a clear statement that could satisfy them. Instead, it invoked an ancillary provision of the Helms-Burton Act that says nothing about whether Congress meant to create new property rights based on foreign government's domestic takings, much less an express statement that it chose to cross that Rubicon. Specifically, the Panel pointed to § 1643*l*, which amended the International Claims Settlement Act (ICSA) to allow a U.S. commission to investigate and determine "the amount and ownership of a claim by a United States national (as defined in [the Helms-Burton Act])" that resulted from a "confiscation" by Cuba— "whether or not the United States national qualified as a national of the United States (as defined in [the ICSA]) at the time of" the confiscation. According to the Panel, § 1643*l*'s disclaimer "would make no sense" if "Title III required the property at issue to be confiscated from a United States national." Op. 12-13.

But there was no need to reach such a drastic conclusion. Instead, § 1643*l*'s disclaimer, properly understood, just lets the commission consider claims brought by entities that meet a broader definition of "United States national" than would otherwise apply under the ICSA. Specifically, while corporations must be majority "own[ed]" by U.S. citizens to qualify as U.S. nationals under the ICSA, § 1643a(1), the Helms-Burton Act extended the definition to any corporation "organized under" domestic law, § 6023(15). So even if such a corporation—"a United States national (as defined in [Title III])"—did not "qualif[y] as a national of the United States (as defined in [the ICSA]) at the time of" the taking, § 1643*l* allows the commission to investigate its claims.

But all that is beside the point here, for a *Cuban* national such as CAISA *never* qualified as a U.S. national—either under the ICSA definition or the Helms-Burton one. Unfortunately, the Panel never addressed § 1643*l*'s references to different definitions of "U.S. national" that make its meaning clear. Nor did it explain what purpose those references could serve under its expansive view of Title III, which may be why the Panel omitted those portions of the statute throughout its opinion. Op. 5, 11-13, 15.

Moreover, even if the Panel's inference from § 1643*l* was a *permissible* one, it is not the sort of *clear* statement necessary here. Indeed, the idea that Congress secreted this substantive elephant in the procedural mousehole of § 1643*l* rather than place it in the provision creating Title III's action (§ 6082) is wildly implausible.[2]

### B.    Title III does not disregard corporate formalities.

In any event, even if a Cuban *corporation* can "own[] [a] claim" to seized property, that would not mean its *shareholders* do. § 6082(a)(1)(A). That too follows from Title III's demand that the plaintiff "owns the claim" to the confiscated "property." *Id.* It is a basic rule of corporate law that "[a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets," claims included. *Dole*, 538 U.S. at 475.

---

[2] The Panel used the same flawed inference from § 1643*l* to nullify another limit in the Helms-Burton Act—the command that "a United States national may not bring an action … on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996." § 6082(a)(4)(B); *see* Op. 13-15. Even though Regueiro was not "'a United States national'" when he allegedly "'acquire[d] ownership of'" the supposed "claim" in 1989, the Panel held he could still pursue his lawsuit on the theory that § 1643*l* shows that Title III covers "claims by plaintiffs who acquired the property before they were United States citizens." Op. 13.

The upshot is that "only a corporation and not its shareholders … can complain of an injury sustained by, or a wrong done to, the corporation." *United States v. Palmer*, 578 F.2d 144, 145-46 (5th Cir. 1978). Here, the airport originally belonged to CAISA, not its shareholders. After Cuba seized the airport, any "claim" to it similarly belonged to CAISA. And for that reason, CAISA's shareholders, Regueiro included, have no "claim" to the airport. Indeed, the Panel denied none of this. Instead, it just held that it was bound by *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939 (11th Cir. 2025), which lets shareholders assert claims under Title III "based on the confiscation of corporate property." *Id.* at 949; *see* Op. 17-19. But neither of the reasons *Fernandez* gave for that position can be reconciled with statutory text or Supreme Court precedent.

**1.** *Fernandez* read Title III to depart from basic corporate law largely on the premise that foreclosing shareholder suits would "remove the word 'claim' from the statute." 135 F.4th at 949. But under the proper reading of Title III, the word "claim" plays a critical role by allowing an injured U.S. national to sue third parties for trafficking in seized property even though he *no longer owns the property* due to the Castro regime's confiscation. Because Cuba acquired ownership of the property it confiscated, it would have made little sense for Congress to limit Title III to *property owners. See Glen*, 450 F.3d at 1255. Instead, to provide a remedy against Castro's depredations, Congress gave an action to those who own "the claim to" the confiscated property, but not the "property" itself. § 6082(a)(1)(A). The word "claim" is therefore essential to Title III's operation, but it in no sense requires the rejection of settled corporate-law principles.

9

**2.**    *Fernandez* fared no better in asserting that shareholders have an "interest" in corporate property, even if they do not "own" it. 135 F.4th at 949. While shareholders may have "an indirect or collateral interest" in corporate property, 11 Fletcher Cyc. Corp. § 5100, Title III does not cover those ancillary interests. That is so for two reasons.

*First*, when Congress wants to authorize claims based on a shareholder's indirect ownership interest in corporate property, it says so expressly. *Dole*, 538 U.S. at 476. The ICSA, for instance, allows U.S. nationals to bring claims based on a "direct" or "*indirect ownership interest in a corporation* … for loss by reason of the nationalization or other taking of such corporation … *or the property thereof.*" § 1642e(b), (c) (emphases added). Other federal statutes similarly "refer to 'direct and indirect ownership.'" *Dole*, 538 U.S. at 476 (collecting examples).

But there is no such language, or anything like it, in the Helms-Burton Act. Instead, Title III defines "property" as "any property … whether real, personal, or mixed, and any present, future, or contingent right, security, or *other interest therein.*" § 6023(12)(A) (emphasis added). The phrase "other interest therein" captures the sorts of ownership that the Act would otherwise omit, such as the "usufructuary concession" in *Havana Docks*, 119 F.4th at 1278. It is no substitute for an express reference to an "indirect" property interest, such as in the ICSA. And as *Dole* held in interpreting the Foreign Sovereign Immunities Act (FSIA), the lack of such language shows "Congress did not intend to disregard" corporate-law principles. 538 U.S. at 476 (phrase "other ownership interest" insufficient to "depart from" corporate-law rules).

*Second*, *Fernandez* conflicts with *Dole*, which read the FSIA to incorporate the same "basic tenet of corporate law" that American invokes here—an "individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets." *Id.* at 475. Like the FSIA in *Dole*, Title III shows "Congress was aware of settled principles of corporate law and legislated within that context." *Id.* at 474. For example, it defines "United States national" to include any "legal entity which is organized under" domestic law. § 6023(15). It also defines "foreign national" to include "any corporation" not organized under domestic law. § 6023(8)(B). And it defines "agency or instrumentality of a foreign state," § 6023(1), by referencing an FSIA provision that *Dole* saw as incorporating "corporate formalities," 538 U.S. at 474 (discussing 28 U.S.C. § 1603(b)). *Dole* therefore controls.

## II.    THE PANEL'S DECISION CONFLICTS WITH PRIOR CIRCUIT PRECEDENT.

The Panel decision (like *Fernandez* before it) also breaks with Circuit precedent. *Glen* rejected the theory that "the Helms-Burton Act" itself could "establish" any "property interest," such as an "ownership element" in taken property. 450 F.3d at 1255. And *Havana Docks* likewise repudiated the idea that "Congress, in enacting Title III, meant to convert" preexisting "property interests" that were "limited at the time of their confiscation" into more expansive ones. 119 F.4th at 1287. Under these precedents, Title III does not "grant victims of property confiscations more rights to the property than they would otherwise have" but for the taking. *Id.* at 1287-88.

11

The Panel nevertheless read Title III to not only *expand* a preexisting property interest, but *create* a new one—a "claim" to property that previously was not cognizable under any body of law. And even if that ruling could be harmonized with *Glen* and *Havana Docks*, the Panel's shareholder-suit ruling would still conflict with them. Before the airport's seizure, no CAISA shareholder had any right in the airport that would let him sue for an injury to it. If someone had damaged the airport before it was confiscated, for instance, neither Regueiro nor his father could have brought a trespass lawsuit. By allowing Regueiro to sue under Title III *after* the airport's taking, the Panel gave him "more rights" than he would have otherwise possessed. *Id.* at 1287.

## III. THE PANEL'S DECISION RESOLVES EXCEPTIONALLY IMPORTANT QUESTIONS IN A MANNER THAT WILL HAVE HARMFUL CONSEQUENCES.

In addition to creating these conflicts, the Panel's errors deputize courts within this Circuit to adjudicate domestic takings by a *foreign government* from *foreign corporations*, so long as they have a single U.S. shareholder. That deputization resolves unusually important questions in a way that will cause four significant harms.

*First*, the Panel's decision greenlights Title III claims that Congress did not, and likely could not, authorize. The idea that Congress, nearly three decades after 1959, imposed staggering liability on U.S. businesses based on new rights arising out purely foreign conduct should not pass without comment by the full Court. Worse, by reading Title III to regulate Cuba's seizure of Cuban-owned property in Cuba, the decision here threatens to put the law on a collision course with the Foreign Commerce Clause.

*Second*, the Panel's dramatic expansion of Title III claims raises foreign-policy risks as well, not least because it departs from the domestic takings rule of international law. Indeed, Congress' displacement of the act-of-state doctrine for these actions—which otherwise guards against the possibility that "judicial determinations regarding the validity of the acts of foreign sovereigns" will harm U.S. "foreign policy"—makes it all the more critical that only those Title III claims Congress actually authorized may proceed. *Glen*, 450 F.3d at 1253; *see also id.* at 1256-57.

*Third*, the Panel's decision substantially increases the sheer *number* of Title III claims that can be filed within this Circuit. Whereas Castro seized the property of "thousands of United States nationals," he confiscated the property of "*millions* of his own citizens." § 6081(3)(B) (emphasis added). Given the scale of those domestic takings, it is likely that few Cuban corporations were left unscathed. It is therefore no surprise that even before the Panel's decision, shareholders of Cuban corporations were pursuing Title III claims within this Circuit. The ruling here, for example, followed *Fernandez* by just a few months. The Panel's decision will only pour fuel on the fire. Especially in the absence of an express statement from Congress, this Court should not lightly allow a flood of foreign litigation into this Circuit.

*Fourth*, Title III is ill-equipped to handle the inevitable case in which multiple shareholders raise claims with respect to the same corporate property. Notably, Title III lets a prevailing plaintiff recover the "fair market value" of the confiscated property, § 6082(a)(1)(A)(i)(III), with the possibility of treble damages as well, § 6082(a)(3)(C)(ii).

13

Those remedies would make no sense if multiple shareholders could bring Title III claims based on the same corporate property. Under that regime, a corporation whose $1 million property was confiscated could secure only $1 million from a subsequent "trafficker," but its 100 U.S. shareholders could collectively obtain $100 million (with treble damages on top). That cannot be right.

\*       \*       \*

In sum, whether a *U.S. shareholder* can bring a Title III claim for alleged trafficking in the confiscated property of a *Cuban corporation* is a critical and recurring question. And it is one this Court in particular needs to get right, as it sees the lion's share of Title III lawsuits, the vast majority of which are filed in Florida. Rehearing—whether by the Panel or the full Court—is therefore warranted to ensure that this Circuit is not inundated with sensitive actions Congress never authorized.[3]

---

[3] This Court should at least invite the United States' views. Reflecting the foreign-policy implications of Title III actions, the Supreme Court recently did so in two such cases. *Havana Docks Corp. v. Royal Caribbean Cruises, Ltd.*, No. 24-983 (June 30, 2025); *Exxon Mobil Corp. v. Corporación Cimex*, No. 24-699 (May 5, 2025). This Court can, and should, do the same here. *See, e.g.*, *Process & Indus. Devels. Ltd. v. Federal Republic of Nigeria*, No. 21-7003 (D.C. Cir. Nov. 15, 2021).

## CONCLUSION

The Court should grant panel rehearing or rehearing *en banc*.

Dated: August 20, 2025

Respectfully submitted,

*/s/ Brinton Lucas*

Ricardo H. Puente
JONES DAY
600 Brickell Avenue, Suite 3300
Miami, FL 33131
(305) 714-9700
rpuente@jonesday.com

Brinton Lucas
Thomas E. Hopson
JONES DAY
51 Louisiana Avenue, NW
Washington, DC 20001
(202) 879-3939
(202) 626-1700
blucas@jonesday.com
thopson@jonesday.com

Alexa R. Baltes
JONES DAY
110 N Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 782-3939
abaltes@jonesday.com

Christopher R.J. Pace
WINSTON & STRAWN LLP
2121 N. Pearl St., Suite 900
Dallas, TX 75201
(214) 453-6565
crjpace@winston.com

*Counsel for Defendant-Appellee American Airlines, Inc.*

15

## CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitations contained in Federal Rule of Appellate Procedure 40(d)(3) and Eleventh Circuit Rule 40-4 because, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 40-4, the brief contains 3,896 words, as determined by the Microsoft Word 2016 program used to prepare it.

This petition complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Garamond.

Dated: August 20, 2025         */s/ Brinton Lucas*
                                Brinton Lucas
                                *Counsel for American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that on August 20, 2025, I electronically filed the foregoing petition with the United States Court of Appeals for the Eleventh Circuit using the ECF system. All parties have consented to receive electronic service and will be served by the ECF system.

Dated: August 20, 2025

/s/ *Brinton Lucas*
_____

Brinton Lucas
*Counsel for American Airlines, Inc.*

# ADDENDUM

[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

———————————————

No. 23-12568

———————————————

JOSÉ RAMÓN LÓPEZ REGUEIRO,

Plaintiff-Appellant,

*versus*

AMERICAN AIRLINES, INC.,
LATAM AIRLINES GROUP, S.A.,

Defendants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:19-cv-23965-JEM

———————————————

Before JILL PRYOR, BRANCH, and GRANT, Circuit Judges.

JILL PRYOR, Circuit Judge:

In response to the confiscation of private property by Fidel Castro's regime in Cuba, Congress passed the Helms-Burton Act. *See* 22 U.S.C. § 6021 *et seq*. Title III of the Act created a private right of action for United States nationals to sue third parties who trafficked in confiscated property. *Id*. § 6082(a)(1). For over 20 years, Title III remained dormant because its right of action was suspended by Presidential decree. *See id*. § 6085(c)(1)(B) (granting the President the authority to suspend the right to bring an action under Title III). In 2019, the Presidential suspension was lifted, and Title III took effect.

Shortly afterward, José Ramón López Regueiro filed suit under Title III against American Airlines, Inc. He alleged that his father had purchased Cuba's main airport. When Castro came to power, the Cuban government confiscated it. He inherited his father's interest in the airport, he alleged, and American Airlines later trafficked in the airport by operating flights in and out of it. He became a United States citizen after the inheritance.

American Airlines moved to dismiss the lawsuit. It argued that the Helms-Burton Act contains two implicit preconditions that must be satisfied to state a claim. First, the property owner had to be a United States citizen when the property he owned was confiscated. Second, the plaintiff had to be a United States citizen when he acquired an interest in the property. American Airlines asserted that Regueiro failed to state a claim because his father was not a

United States citizen when the Cuban government confiscated the airport and Regueiro became a United States citizen only after he inherited an interest in the property. The district court agreed and dismissed the case.

After careful review, and with the benefit of oral argument, we disagree. Based on the plain language of the statute, we conclude that the district court erred. The Helms-Burton Act does not impose the preconditions American Airlines advances. We thus vacate the district court's order and remand for further proceedings.

## I. BACKGROUND

In this section, we begin with an overview of Title III of the Helms-Burton Act. Next, we turn to the allegations in Regueiro's complaint. We then review this case's procedural history.

Congress found that after Fidel Castro came to power in Cuba in 1959, his government "trampled on the fundamental rights of the Cuban people." 22 U.S.C. § 6081(3)(A). It "confiscated" the property of "millions of [Cuban] citizens," "thousands of United States nationals," and "thousands more Cubans who claimed asylum in the United States as refugees because of persecution and later became naturalized citizens of the United States." *Id.* § 6081(3)(B).

In response, Congress passed statutes to protect United States nationals whose property was confiscated by the Cuban government. *Garcia-Bengochea v. Carnival Corp.*, 57 F.4th 916, 919–20 (11th Cir. 2023). As relevant here, Congress amended the International Claims Settlement Act of 1949 with the Cuban Claims Act of

1964. *Id*. at 920 (citing 22 U.S.C. §§ 1643–1643k). The Cuban Claims Act empowered the Foreign Claims Settlement Commission to certify the validity and value of claims of United States nationals as part of an effort to negotiate settlements to redress property confiscation by the Cuban government. *Id*.; *see* 22 U.S.C. § 1643b(a). A claim could not be certified as valid under the Cuban Claims Act "unless the property on which the claim was based was owned . . . by a national of the United States on the date of the loss." 22 U.S.C. § 1643c(a). Through this claims process, the Foreign Claims Settlement Commission has certified as legitimate over 6,000 claims valued at approximately $1.9 billion. *Garcia-Bengochea*, 57 F.4th at 920. But "Cuba and the United States . . . have never reached a settlement on these claims (or, for that matter, on claims by Cuba against the United States)." *Id*.

About 30 years after passing the Cuban Claims Act, Congress enacted the Cuban Liberty and Democratic Solidarity Act of 1996, 22 U.S.C. § 6021 *et seq*., known as the Helms-Burton Act, "in an attempt to provide a means of compensation for some of the losses suffered as a result of the Castro regime's actions." *Garcia-Bengochea*, 57 F.4th at 919. Unlike the earlier legislation, which sought to settle claims between the property owner and the Cuban government, the Act provides United States nationals with a private right of action against those who traffic in the confiscated property. 22 U.S.C. § 6081(11). Under the Act's Title III, "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States national who owns the claim to such property." *Id*.

§ 6082(a)(1)(A). A person "traffics" in property if, among other things, he "knowingly and intentionally . . . engages in a commercial activity using or otherwise benefiting from confiscated property." *Id.* § 6023(13)(A)(ii).

The Helms-Burton Act also amended the Cuban Claims Act, allowing district courts to refer Title III claims to the Foreign Claims Settlement Commission to determine the "amount and ownership of a claim by a United States national." *Id.* § 1643l. Unlike the Cuban Claims Act, however, this amendment allows the Commission to evaluate the validity of a claim "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba." *Id.*

But Title III allows the President of the United States to suspend this right of action. *Id.* § 6085(c)(1)(B). Each President exercised this suspension power from the Act's passage until May 2019, when Title III took effect for the first time, authorizing eligible plaintiffs to file suit. *Garcia-Bengochea*, 57 F.4th at 919–20.

Shortly after Title III took effect, Regueiro filed a complaint against American Airlines.[1] He alleged that his father, José López Vilaboy, purchased Cuba's main domestic and international airport in 1955 through a company known as Compañia de Aeropuertos

---

[1] Regueiro also sued Latam Airlines Group, S.A. The district court administratively closed the matter as to Latam when the company initiated bankruptcy proceedings. Regueiro later dismissed his claim against Latam. As a result, this appeal concerns only Regueiro's claims against American Airlines.

Internacionales, S.A. (CAISA). In 1959, the Cuban government allegedly seized the airport and forced Vilaboy to flee to the United States. After Vilaboy passed away intestate in Florida in 1989, ownership of CAISA passed to Regueiro under Florida law. Regueiro became a United States citizen in 2015.

Regueiro alleged that the Cuban government illegally confiscated the airport, property in which he has an ownership interest. American Airlines trafficked in the property in violation of the Act by operating flights in and out of the airport since at least 1991.

American Airlines filed a motion to dismiss, arguing in part[2] that Regueiro's Helms-Burton Act claim failed because Vilaboy

---

[2] American Airlines also moved to dismiss for lack of standing, lack of personal jurisdiction, and improper venue. The district court rejected these arguments. Because American Airlines does not raise personal jurisdiction or venue on appeal, we do not address them. *See Lipofsky v. N.Y. State Workers Comp. Bd.*, 861 F.2d 1257, 1258 (11th Cir. 1988) ("Lack of personal jurisdiction and improper venue, unlike lack of subject matter jurisdiction which requires dismissal on the court's own motion if not raised by the parties, are waivable defects." (footnote omitted)). Although American Airlines did not raise standing on appeal either, we are required to address it as part of our obligation to examine our own jurisdiction. *United States v. Hays*, 515 U.S. 737, 742 (1995).

Standing requires that a plaintiff have suffered an injury in fact that is traceable to the defendant's conduct and redressable by a ruling in the plaintiff's favor. *Id.* at 743. In *Garcia-Bengochea*, we considered whether the plaintiff had standing to pursue a similar Helms-Burton Act claim and concluded that he did. 57 F.4th at 922–28. His claim was based on the Cuban government's confiscation of waterfront real property that was later used by two cruise lines. *Id.* at 921–22. We held that, assuming his claim had merit as we must on a standing inquiry, the plaintiff had a concrete and personalized injury—the confiscation

was not a United States citizen when the airport was confiscated and Regueiro was not a United States citizen when he inherited his interest in the airport. Relying on the text of the Act, it maintained that Regueiro's claim failed because his father was not a "United States national who own[ed] the claim" to the airport when it was confiscated by the Cuban government. 22 U.S.C. § 6082(a)(1)(A). Separately, it contended that Regueiro's claim failed because the Act requires that, "[i]n the case of property confiscated before March 12, 1996, a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim before March 12, 1996," and Regueiro was not a citizen when he inherited his interest in the airport. *Id.* § 6082(a)(4)(B). American Airlines further contended that Regueiro failed to state a claim under the Act because he had no ownership interest in the airport. It argued that, under corporate-law principles, Regueiro owned at most shares in CAISA, not an ownership interest in the airport itself.

---

of property in which he had an ownership interest and the cruise lines' subsequent use of the property without compensating him. *Id.* at 923. His injury was traceable to the defendant cruise lines because of their use of the property. *Id.* at 926. And it was redressable because a favorable ruling by a court would have compensated the plaintiff for the cruise lines' use of the property. *Id.* at 927.

This same analysis applies to Regueiro's claim. All we need to do is substitute the names of the plaintiff and the defendant and the description of the property. We thus are satisfied that he has standing.

A magistrate judge recommended that the district court grant the motion to dismiss. The magistrate judge agreed with American Airlines that the Helms-Burton Act required United States citizenship both at the time of confiscation and of acquisition of the property. The magistrate judge thus recommended that the district court dismiss the case because Vilaboy was not a United States citizen when the airport was confiscated and Regueiro was not a citizen when he acquired his claim to the airport or before the Act's effective date. But the magistrate judge recommended that the district court reject American Airlines's corporate ownership challenge because it involved factual issues best resolved at summary judgment. The district court adopted the recommendation, dismissing the case because the airport was not confiscated from a United States national and Regueiro was not a United States national when he acquired an interest in the airport. The district court did not resolve the corporate ownership question.

## II.  STANDARD OF REVIEW

This Court reviews *de novo* a district court's statutory interpretation. *Fuerst v. Hous. Auth. of Atlanta*, 38 F.4th 860, 869 (11th Cir. 2022). We also review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Fox v. Gaines*, 4 F.4th 1293, 1295 (11th Cir. 2021).

### III. DISCUSSION

We address two issues under the Helms-Burton Act. We begin with the citizenship requirement of the Act. This issue turns on whether the district court erred in dismissing Regueiro's complaint for failure to state a claim under the Helms-Burton Act because (1) Regueiro's father was not a United States citizen when his property was confiscated and (2) Regueiro was not a citizen when he inherited an interest in the property. We conclude that the district court erred because the plain text of the Helms-Burton Act makes clear that the statute does not require the owner of the property to be a United States citizen when the property was seized or the plaintiff to be a citizen when he acquired an interest in the property. Because the complaint alleged that Regueiro had an interest in the confiscated property and was a United States citizen when he filed suit, he stated a claim.

We then turn to the ownership requirement of the Act. American Airlines argues that we should affirm the district court's dismissal order on the alternate ground that Regueiro owned only shares in a company that owned the airport; he did not own the airport itself. But this argument is foreclosed by our recent decision holding that the Helms-Burton Act allows shareholders to recover from defendants who unlawfully traffic in corporate assets. *Fernandez v. Seaboard Marine LTD.*, 135 F.4th 939, 949–50 (11th Cir. 2025). We therefore reject this argument as well.

**A.    The Helms-Burton Act's Citizenship Requirement**

Our discussion of the Helms-Burton Act's citizenship requirement proceeds in two parts. First, we review the statute's text and conclude that it unambiguously does not require United States citizenship when the property was confiscated or when the plaintiff acquired an interest in the property. Second, we apply this plain meaning to Regueiro's complaint and conclude that he stated a claim for relief.

>    *1.        The Text of the Helms-Burton Act*

We begin with the text of the statute. *Garcia-Bengochea*, 57 F.4th at 930. "If the statutory language is plain, we must enforce it according to its terms." *King v. Burwell*, 576 U.S. 473, 486 (2015). "[W]hen deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (internal quotation marks omitted). We remain mindful that a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1088 (11th Cir. 2018) (internal quotation marks omitted), *aff'd*, 587 U.S. 262 (2019).

The Helms-Burton Act provides United States nationals with a private right of action meant to deny third parties profits from property confiscated by the Cuban government. *See* 22 U.S.C. § 6081(11). Title III of the Act states that "any person that . . . traffics in property which was confiscated by the Cuban Government on or after January 1, 1959, shall be liable to any United States

national who owns the claim to such property." *Id.* § 6082(a)(1)(A). If the property was confiscated before March 12, 1996, "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquire[d] ownership of the claim before" that date. *Id.* § 6082(a)(4)(B). In addition, the trafficking of the property must have occurred after November 1, 1996. *See id.* §§ 6082(a), 6085(a). The elements of a Title III claim thus include: (1) the Cuban government confiscated property on or after January 1, 1959; (2) a third party trafficked in the property after November 1, 1996; (3) the plaintiff is a United States national; (4) the plaintiff "owns an interest (i.e., has a claim)" in the confiscated and trafficked-in property; and (5) if the property was confiscated before March 12, 1996, the plaintiff acquired his interest in the property before that date. *Garcia-Bengochea*, 57 F.4th at 929–30.

Besides creating this cause of action, the Helms-Burton Act amended the Cuban Claims Act to allow the Foreign Claims Settlement Commission to validate the ownership and value of Title III claims. 22 U.S.C. § 1643l. Although the Cuban Claims Act enables the Commission to determine the validity of claims related to property taken by the Cuban government, it limits the Commission's authority to validate these claims "unless the property on which the claim was based was owned wholly or partially, directly or indirectly by a national of the United States on the date of the loss." *Id.* § 1643c(a). But the Helms-Burton Act allows district courts to refer Title III claims to the Commission "for fact-finding purposes" regardless of "whether or not the United States national

qualified as a national of the United States . . . at the time of the action by the Government of Cuba." *Id.* § 1643l.

We must read Title III of the Helms-Burton Act and this amendment to the Cuban Claims Act together. Although they appear in separate code sections as enacted, both are part of the Helms-Burton Act. *Compare id.* §§ 1643l, 6082(a)(1)(A) *with* Cuban Liberty and Democratic Solidarity (LIBERTAD) Act of 1996, Pub. L. No. 104–114, §§ 302–03, 110 Stat. 785, 815, 820. We thus interpret the plain meaning of the statute by reading them together. *See In re Shek*, 947 F.3d 770, 776–77 (11th Cir. 2020) ("The plain meaning of a statutory provision derives not only from the 'particular statutory language at issue,' but also 'the language and design of the statute as a whole.'" (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)).

Beginning with when the Cuban government confiscated the property, the Helms-Burton Act read as a whole unambiguously does not require the property in question to have been owned by a United States national when the Cuban government confiscated it. Instead, Title III provides a cause of action to "any United States national," 22 U.S.C. § 6082(a)(1)(A), defining "United States national" as "any United States citizen," *id.* § 6023(15)(A). And the amendment permitting validation of Title III claims by the Foreign Claims Settlement Commission confirms that a United States national can bring a Title III claim even if the plaintiff was not a United States national at the time the property was confiscated. *Id.* § 1643l. After all, if Title III required the property at issue

to be confiscated from a United States national, it would make no sense to allow district courts to refer Title III claims to the Foreign Claims Settlement Commission "for fact-finding purposes" "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba." *Id.*

Turning to when the plaintiff acquired an interest in the property, the Act likewise does not require the plaintiff to have been a United States national at that time. The Act states that, if the property was confiscated before March 12, 1996, "a United States national may not bring an action under this section on a claim to the confiscated property unless such national acquires ownership of the claim" by that date. *Id.* § 6082(a)(4)(B). American Airlines argues that the phrase "such national acquires" indicates that Congress limited Title III claims to those where were already citizens when they acquired their interest in the confiscated property. But the Act's text encompasses plaintiffs who acquired the property before becoming United States citizens. Once again, § 1643l provides persuasive evidence. In authorizing district courts to hear Title III claims "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba," this section strongly suggests that the Helms-Burton Act includes claims by plaintiffs who acquired the property before they were United States citizens. Consider a typical Helms-Burton Act plaintiff—a Cuban citizen whose property was seized by the Cuban government who later became a naturalized citizen of the United States. *See, e.g., Fernandez*, 135 F.4th at 945 ("After the

Castro regime came to power in 1959, it confiscated all the property that the family owned. . . . Soon after, Fernandez and her siblings fled Cuba and became U.S. citizens."). By allowing a plaintiff to bring a Title III claim even if she was not a United States citizen when the Cuban government confiscated her property, it is evident that the Helms-Burton Act also covers plaintiffs who acquired their property before becoming United States citizens. Indeed, "[f]or many Cubans who had property confiscated by the Cuban government, and who later became U.S. nationals," the Act "was the only remedy available to obtain monetary compensation." *Garcia-Bengochea*, 57 F.4th at 932 (Jordan, J., concurring). Section 1643l thus confirms that the temporal limitations in the Helms-Burton Act concern when the plaintiff acquired an interest in the property rather than when the plaintiff became a United States citizen.

Furthermore, American Airlines's reading of the statute contradicts the Helms-Burton Act's definition of "United States national." The Act defines "United States national" in relevant part as "any United States citizen." 22 U.S.C. § 6023(15)(A). "As we have often had occasion to say, when interpreting a statute, 'any' means 'all.'" *Pinares v. United Techs. Corp.,* 973 F.3d 1254, 1262 (11th Cir. 2020) (internal quotation marks omitted). "Typically, when Congress intends to restrict the scope of a particular word, it introduces that word with a limiting adjective or adverb." *United States v. Caniff*, 955 F.3d 1183, 1190 (11th Cir. 2020). Here, "Congress's use of 'any'" in the Helms-Burton Act instructs us to give the phrase "United States national" "the broadest interpretation that it will reasonably bear." *Id.* The broad term "any United States national"

therefore includes those United States nationals who became citizens after acquiring the property in question. American Airlines's reading of the phrase "such national acquires" thus conflicts with the Act's broad definition of "United States national."

The Helms-Burton Act's text therefore provides a cause of action to "any United States national who owns the claim to" "property which was confiscated by the Cuban Government," 22 U.S.C. § 6082(a)(1)(A), "whether or not the United States national qualified as a national of the United States . . . at the time of the action by the Government of Cuba," *id.* § 1643l. The Act further broadly defines United States national without any limitation based on the when the plaintiff became a citizen. Requiring that the plaintiff was a United States national when the property was confiscated or when the plaintiff gained an interest in the property would therefore contradict the plain language of the statute.

We recognize that, in interpreting the Act as imposing preconditions on Title III's cause of action, the district court relied on dicta in a footnote in this Court's decision in *Glen v. Club Méditerranée, S.A.*, which stated that "[w]e need not decide . . . [b]ut we do note that the . . . property at issue in this litigation was owned by Cuban nationals at the time of its expropriation and thus may not be the proper subject of a trafficking claim under the statute." 450 F.3d 1251, 1255 n.3 (11th Cir. 2006). In *Glen,* we made this observation based on the legislative findings in Title III. *Id.*; *see* 22 U.S.C. § 6081(5) (finding that property was "confiscated from United States nationals"), (6)(B) (finding that "this 'trafficking' in

confiscated property . . . undermines the foreign policy of the United States . . . to protect the claims of United States nationals"), (11) (finding that the cause of action created by the Act was meant to benefit United States nationals by denying profits to traffickers). For starters, the footnote says "may not" instead of "is not." But even if the footnote purported to answer the question the Court posed, it would be dicta and not binding on us. More fundamentally, because we conclude that the statute unambiguously does not require the property owner to have been a United States national when the property was confiscated or the plaintiff to have been a United States national when the property was acquired, the findings and purpose provisions of the statute do not alter our analysis. *See Georgia v. President of the United States*, 46 F.4th 1283, 1300 (11th Cir. 2022) ("[P]urpose provisions can suggest only which permissible meanings of the enactment should be preferred when the text is otherwise ambiguous." (internal quotation marks omitted)).

Because we conclude that the meaning of the Helms-Burton Act is plain, we "must enforce it according to its terms." *King*, 576 U.S. at 486. We therefore conclude that Title III provides a right of action to any United States citizen—even if the property owner was not a citizen when the Cuban government seized the property at issue and the plaintiff was not a citizen when he acquired an interest in the property.

  2. *Regueiro's Complaint*

Having concluded that the Helms-Burton Act does not require the property owner to have been a United States national

when the property at issue was confiscated or the plaintiff to have been a United States national when the property was acquired, we now apply the plain language of the Act to Regueiro's complaint. Taking his allegations of fact as true, as we do at the motion-to-dismiss stage, we know that Regueiro's father, Vilaboy, purchased the airport through his company, CAISA. In 1959, the Cuban government confiscated the airport. Vilaboy and his family then fled Cuba for the United States. When Vilaboy passed away on March 2, 1989, ownership of CAISA passed to Regueiro. Regueiro became a United States national in 2015. American Airlines has operated flights to and from the airport since 1991 to the present.

Regueiro has pleaded the elements of a Title III claim: (1) the Cuban government confiscated the airport on or after January 1, 1959; (2) American Airlines trafficked in the airport after November 1, 1996; (3) Regueiro was a United States national when he sued; (4) Regueiro "owns an interest (i.e., has a claim)" in the airport through his CAISA shares; and (5) Regueiro acquired his interest in the airport before March 12, 1996. *See Garcia-Bengochea*, 57 F.4th at 929–30. The district court therefore erred in dismissing his claim; we vacate the dismissal.

## B.     The Ownership Requirement of the Helms-Burton Act

American Airlines nevertheless argues that we should affirm the district court's ruling on an alternative ground: that Regueiro failed to state a claim for relief because he does not own an interest in the airport but rather shares in CAISA, the company that owns the airport. According to American Airlines, Regueiro cannot

assert a claim for confiscated property under the Helms-Burton Act because Cuba confiscated the airport, not his ownership interest in CAISA. It argues that corporate law principles dictate this result because a corporation's shareholders do not own its assets. These principles are applicable, it argues, because the Congress passed the Act with these corporate formalities in mind.

But we recently rejected a similar argument in another Helms-Burton Act case. In *Fernandez v. Seaboard Marine Ltd.*, the plaintiffs owned shares in their family's companies, which owned real property and port facilities in Cuba. 135 F.4th at 945. The Castro regime confiscated both the plaintiffs' shares and the property and ports the companies owned. *Id.* The plaintiffs brought a Title III claim alleging that Seaboard later trafficked in the property by making deliveries to the confiscated ports and transporting those deliveries across the confiscated real property. *Id.* at 946. At summary judgment, Seaboard argued that the plaintiffs did not own the property confiscated by the Cuban government because their family's companies owned it, and the plaintiffs owned only shares in the companies. *Id.* The district court granted Seaboard summary judgment because it concluded that it had not trafficked in any confiscated property. *Id.* at 947. But it also concluded that shareholders could sue under the Helms-Burton Act based on the confiscation of corporate property. *Id.* On appeal, Seaboard again argued that the plaintiffs, as shareholders, did not own the confiscated property. We concluded that a single plaintiff had shown both that she had an interest in the property and that Seaboard had trafficked in it. *Id.* at 949–50, 959. We held that the Helms-Burton Act "operates

to protect those who had an interest in confiscated property, including shareholders, even if they did not own the property itself." *Id.* at 949. We reversed the summary judgment against the one plaintiff who "present[ed] enough evidence that she had a stake in the confiscated companies to survive summary judgment." *Id.* at 950.

American Airlines raised the corporate ownership issue before the district court. But because the district court dismissed Regueiro's claim based on its erroneous interpretation of the Helms-Burton Act, it did not decide this question. As we review *de novo* whether a complaint states a claim for relief, we may "in our discretion resolve questions" about whether the plaintiff stated a claim even if these questions were "not addressed by the district court." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 609 (11th Cir. 1991). Our opinion in *Fernandez* establishes that that Regueiro can bring a Title III claim based on an ownership interest in CAISA, the company that owns the airport. Regueiro alleged that the Cuban government confiscated the airport and that CAISA owned the airport. He further alleged that he inherited his father's shares in CAISA. At the motion to dismiss stage, these allegations of ownership are sufficient to state a claim.

## IV. CONCLUSION

The district court's order dismissing the case is vacated, and the case is remanded for further proceedings consistent with this opinion.

**VACATED AND REMANDED**.